IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHELBY TYRONE CLARK, JR., : | |
|     Plaintiff, : | |
| : | |
|     v. : | Case No. 5:21-cv-4049-JDW |
| : | |
| JAMES KREMUS, : | |
|     Defendant. : | |

## MEMORANDUM

Shelby Tyrone Clark, Jr., a prisoner at Lehigh County Jail, claims that he lost his home, furniture, vehicle, and personal property because James Kremus called his home phone number instead of his landlord when verifying a "home plan." For the reasons set forth below, the Court will dismiss Mr. Clark's Constitutional claims with prejudice, and it will dismiss his state law claims without prejudice for lack of jurisdiction.

I.     FACTUAL ALLEGATIONS

On December 8, 2020, police officers in Allentown, Pennsylvania, arrested Mr. Clark on charges of simple assault, carrying an unlicensed firearm, and making terroristic threats. Mr. Clark entered a guilty plea on April 19, 2021, to the assault and firearm charges. He was sentenced the same day to a term of incarceration of 6 to 23 months, to be followed by a 12-month term of probation. *Id.* His maximum term of incarceration extends through November 2022.

Mr. Kremus serves as an Institutional Parole Officer with the Lehigh County Adult Probation/Parole Office. Mr. Clark asserts that, as part of completing a "home plan," he completed paperwork to provide Mr. Kremus with the phone number for Mr. Clark's landlord. (Mr. Clark does not allege the purpose of the home plan, though it appears to have something to do with a prisoner's request for parole.) Mr. Clark asserts that he provided the landlord's phone number because his fiancée no longer lived at his home, so no one would be there to answer the phone. Nonetheless, Mr. Kremus called Mr. Clark's home phone number. As predicted, he did not reach anyone. It appears that because no one answered, Mr. Kremus believed that no one was living in the home.

Mr. Clark asserts he has lost his vehicle, home, furniture, electronics, and family heirlooms but he does not specify how these alleged losses stem from Mr. Kremus's alleged error. He seeks an unstated amount of money damages for "intentional infliction of emotional distress, abuse of power, discriminatory intent or purpose, malice and intent, loss of property, cruel and unusual punishment," due process violations, deliberate indifference, and "indemnification." (ECF No. 2 at § VI.)

## II.   STANDARD OF REVIEW

A plaintiff seeking leave to proceed *in forma pauperis* must establish that he is unable to pay for the costs of his suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). Where, as here, a court grants a plaintiff leave to proceed *in forma pauperis*, the Court must determine whether the

complaint states a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). That inquiry requires the court to apply the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Under that standard, the court must take all well-pleaded allegations as true, interpret them in the light most favorable to the plaintiff, and draw all inferences in his favor. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Moreover, because Mr. Clark is proceeding *pro se*, the Court must construe his pleadings liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III.   DISCUSSION

#### A.   Leave To Proceed *In Forma Pauperis*

Mr. Clark has completed the form provided on the Court's website for applications to proceed *in forma pauperis* and has attested under penalty of perjury that he cannot afford to pay the filing fees. (ECF No. 1.)  Moreover, his application to proceed *in forma pauperis* demonstrates that he lacks the income or assets to pay the required filing fees. Therefore, the Court will grant him leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Mr. Clark will nonetheless have to pay the full filing fee in installments. *See* 28 U.S.C. § 1915(b).

#### B.   Plausibility Of Claims In The Complaint

Mr. Clark filed his complaint on the Court's form for prisoners asserting civil rights claims. Read liberally, his Complaint appears to assert violations of his Constitutional rights and of common law.

1. **Section 1983**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Mr. Clark's claim appears to be that Mr. Kremus's error in calling Mr. Clark's home phone, instead of his landlord's phone, caused prison authorities to keep him in custody rather than to release him on parole.

The Fourteenth Amendment to the United States Constitution provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two steps. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972). First, the court must determine whether the state has interfered with a liberty or property interest. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Second, if and only if a petitioner establishes the existence of a protected interest, the court must examine whether the procedures leading to that deprivation were constitutionally sufficient. *See id*.

"A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state." *Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999). The Constitution does not establish a liberty interest in parole. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S.

1, 7 (1979). Thus, if prisoners in Pennsylvania have a protected liberty interest in some aspect of their parole, it must derive from Pennsylvania law. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (recognizing that "States may . . . create liberty interests which are protected by the Due Process Clause"). The statutes governing Pennsylvania's Board of Probation and Parole, however, do not grant a state prisoner any constitutionally protected liberty interest in being released on parole prior to the expiration of his maximum sentence. *See Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001). Because Mr. Clark has no constitutionally protected liberty interest in parole or any parole procedures, his claim for a due process violation based on Mr. Kremus's alleged error in considering his home plan fails. *See, e.g., Newman v. Beard*, 2008 WL 2149605, at *2 (W.D. Pa. May 21, 2008); *Nellom v. Luber*, 2004 WL 816922, at *10 (E.D. Pa. Mar. 18, 2004).

Mr. Clark also references "cruel and unusual punishment," but aside from that conclusory language, he makes no allegation about anything that anyone has done that might violate, or even implicates, the Eighth Amendment. The Court will therefore dismiss his Section 1983 claims with prejudice.

### 2. State law

The Court could only hear Mr. Clark's state law claims by exercising supplemental jurisdiction over them under 28 U.S.C. § 1367(c) over them. Supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court

declines to exercise jurisdiction over those claims, given the absence of any surviving federal claims.

## IV.     CONCLUSION

For the reasons stated, the Court will dismiss Mr. Clark's Constitutional claims against Mr. Kremus with prejudice and his state law claims without prejudice. Mr. Clark remains free to pursue his state law claims in an appropriate state court. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

September 28, 2021